JOSEPH & ASSOCIATES
JOEL D. JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, MD 20814
(301) 941-1989

MICHAEL J. WALLERI
LAW OFFICES OF MICHAEL J. WALLERI
330 Wendell Street, Suite E
Fairbanks, AK 99701
(907) 452-4716

 Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAVAJO HEALTH FOUNDATION/<br>SAGE MEMORIAL HOSPITAL,<br><br>               Plaintiff,<br><br>v.<br><br>THE HONORABLE MIKE LEAVITT, in his<br>capacity as Secretary for Health and<br>Human Services, the DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES, and<br>THE UNITED STATES OF AMERICA,<br><br>               Defendants. | Civil Action No. 1:07-00151 (RWR)<br><br>**MEMORANDUM IN SUPPORT OF<br>MOTION TO PERMIT DISCOVERY<br>AND SUPPLEMENTATION OF THE<br>RECORD** |

Plaintiff, the Navajo Health Foundation seeks an order to permit discovery

and supplementation of the record with evidence.  The motion, however, goes to the

very nature of these proceedings: i.e. whether these proceedings are a direct action

invoking the original jurisdiction of this Court or whether the Court is limited to

review of the administrative record provided by the Indian Health Service.   As

more fully explained below, the Plaintiff is entitled to full discovery under the

FRCP, and to supplement the record with evidence, including an evidentiary

hearing, as may be necessary.


**BACKGROUND**

Congress has unambiguously declared that the federal government has a

legal responsibility to provide health care to Indians living on reservations.[1]  The

Indian Health Service (IHS) is the federal agency charged with the duty to carry out

this function.[2] Additionally, the Indian Self-Determination and Education Assistance

Act (ISDEA),[3] authorizes Indian tribes and tribal organizations to enter into

contracts for the provision of federally funded services to Indians because of their

---

[1] *White v. Califano, 437 F. Supp. 543, 555  (S.D.D. 1978)  affirmed by White v. Califano, 581 F.2d 697 (8th Cir. 1978);  See also McNabb v. Heckler, 628 F. Supp. 544 (D. Mont. 1978), affirmed by McNabb v. Bowen, 829 F.2d 787, 792 (9th Cir. 1987).*  The obligation to provide health services to on-reservation Native Americans is founded upon a combination the Indian Health Care Improvement Act, [25 USC §§  ], the Snyder Act [25 USC §25] and federal common law principles of the federal trust obligation owing to Native Americans.  Supra.  See also, COHEN, HANDBOOK OF FEDERAL INDIAN LAW, 696-702 (1982 Ed.)
[2] COHEN, HANDBOOK OF FEDERAL INDIAN LAW, *supra.*
[3] 25 USCS §§ 450 *et seq.*

status as Indians.[4] Under the ISDEA, the Secretary, upon the request of a tribe, is

mandated to enter into a contract or a severable portion of a contract to provide

health services to Indians unless one of five (5) conditions exists.[5] The Act specifies

that the Secretary must pay a tribe's costs, including administrative expenses, which

include "contract support costs."[6]

Sage Memorial hospital was established in 1911 by the Presbyterian Church

Mission near the Hubbell Trading Post (present day Ganado, Arizona) on the

Navajo Reservation. In July 1974, the hospital was transferred from the Presbyterian

---

[4] Id., at § 450f(a)(1)

[5] Id., at § 450f(a)(2). The five exception to mandated contracting are in cases where

> (A) the service to be rendered to the Indian beneficiaries of the particular program or function to be contracted will not be satisfactory;
> (B) adequate protection of trust resources is not assured;
> (C) the proposed project or function to be contracted for cannot be properly completed or maintained by the proposed contract;
> (D) the amount of funds proposed under the contract is in excess of the applicable funding level for the contract, as determined under section 450j–1 (a) of this title; or
> (E) the program, function, service, or activity (or portion thereof) that is the subject of the proposal is beyond the scope of programs, functions, services, or activities covered under paragraph (1) because the proposal includes activities that cannot lawfully be carried out by the contractor.

[6] Id. at §§ 450j-1(a)(1) and (2). Administrative expenses include (1) the amount that the agency would have spent "for the operation of the progra[m]" had the agency itself managed the program, Id. at § 450j-1(a)(1)   and (2) "contract support costs," Id. at § 450j-1(a)(2). See also, *Cherokee Nation v. Leavitt, 543 U.S. 631, 634-635 (2005)*

Church to the Plaintiff, the Navajo Health Foundation (NHF), a non-profit

corporation chartered under the laws of the Navajo Nation.  The Board of the

Navajo Health Foundation is elected by the various Navajo chapters[7] located in the

surrounding area.  As a result, the NHF Board and staff is predominantly Navajo.

Since the transfer, NHF received funding from the Indian Health Services, to

provide health services to IHS beneficiaries within the Fort Defiance Service Unit of

the Navajo Reservation.   The contract (Contract No. 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) was authorized

under the Buy Indian Act,[8] not under the  ISDEA.

In October 2003, the Navajo Nation Council[9] designated the NHF as a "tribal

entity" and authorized the Navajo Health Foundation to enter into an ISDEA

contract with the Navajo Area Indian Health Service (NAIHS) for the provision of

health services in the portion of the Fort Defiance Service Area previously served by

NHF.  The obvious purpose of the designation was to switch the existing contract

from a Buy Indian Act contract to an ISDEA contract. Thereafter, the Navajo Health

---

[7] A Navajo Chapter is a local subdivision of the Navaho Nation's government. See
Navajo Nation Code T. 2, §§ 4001 et. seq.
[8] 25 U.S.C. § 47
[9]  The Council is  the governing body of the Navajo Nation. See Navajo Nation Code
T. 2, § 101

Foundation submitted a proposal to contract under the terms of the ISDEA to

NAIHS for all "programs, functions, services and activities" (PFSAs) and funds

previously provided through Contract No. 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, together with all associated

area and headquarter tribal shares, contract support costs and other benefits

associated with such contracted PFSA's.[10]

On October 20, 2004, Mr. John Hubbard, NAIHS Area Director issued a letter

partially declined and partially awarding an ISDEA contract to NHF for the

provision of health services effective October 1, 2004.  The NAIHS extended the Buy

Indian contract for that portion of the health services not contracted under the

ISDEA.

The reasons for the declination generally fall into two categories. On one

hand, IHS indicated that Contract Support Costs necessary to support the contract

were not available.  On the other hand, IHS either could not or would not shift funds

used to support the NHF Buy Indian Act contract to the ISDEA program.   From

NHF's point of view, the availability of contract support funds would be decided by

---

[10] The change from a Buy Indian Contract to an  ISDEA contract was intended to
provide additional benefits to Sage, including increased and stable  funding, Federal
Tort Claims Coverage, GSA purchasing options, etc.

the case pending before the US Supreme Court.  That issue was ultimately decided

in favor of the tribes in *Cherokee Nation v. Leavitt, 543 U.S. 631, 634-635 (2005)*.   As to

the second issue, NHF believed that the funding from the Buy Indian Act contract to

the ISDEA program was legally permissible by either NAIHS before pass-through to

NHF, or by NHF after it received the funds from NAIHS.  Specifically, NHF pointed

out that NAIHS had actually done such a budgetary shift in a similar contract with

the Montezuma Creek health programs, which demonstrated that it was possible.

Notwithstanding their disagreement, NHF and NAIHS agreed to disagree as to

whether the partial declination was legally permissible, but agreed to continue to

cooperate to resolve the perceived impediments to contracting over the ensuing

year.

       This dual contract situation continued through 2006, but the parties were not

able to resolve the perceived impediments to full ISDEA contacting.   On or about

May 23, 2006, the NAIHS and NHF entered into a memorandum of agreement

(MOA) respecting the expansion of the  Navajo Health Foundation's  ISDA contract

to include all PFSA's performed by the NAIHS, and agreeing to seek a re-

programming request to shift previously declined PFSA's to Direct service functions

eligible for contracting by NHF, and proceeded to negotiate the FY 2007 Annual

Funding Agreement (AFA) for the ISDEA contact.[11]  At the negotiations, however, NAIHS refused to negotiate contracting the expanded PFSA's as provided by the May MOA, and demanded that Navajo Health Foundation submit a new proposal for an expanded contract.  It later became apparent that IHS breached the May MOA and refused to submit a reprogramming request to transfer contract health PFSA's to direct service PFSA's as required under the May MOA.

On September 6, 2006, the NHF submitted a new proposal under protest for an expanded contract including all PFSA's operated by NAIHS, and requested technical assistance to address any deficiencies under the proposal, which is provided for in the ISDEA.[12]  NAIHS declined to provide the requested technical assistance to remedy alleged defects in the Navajo Health Foundation expanded contract proposal.

On or about September 29, 2006, NAIHS approved the FY 2007 AFA, excluding certain PFSA's, without a letter of declination.  Later, on December 5, 2006, the NAIHS issued a letter partially declining the expanded contract.   Again,

---

[11] These negotiations occurred on July 26 and 27, 2006.
[12] 25 USC § 450f(b)(2)

NAIHS extended the Buy Indian Contract, which remains in effect to the present

date.   Thus, the dual-contract situation continues to this date.


**PROCEDURAL POSTURE OF CASE.**

This case was subsequently filed under 25 USC 450m-1(a), which allows

direct court actions for redress of violations of Indian Self-Determination Act.  From

the beginning the parties have disagreed as to whether this matter should be treated

as a direct action against the Secretary subject to the normal Federal Rules of Civil

Procedure (FRCP), or an Administrative Appeal. The parties were able to resolve

initial discovery issues by allowing the Secretary to submit an Administrative

record.  However, the Secretary refuses to cooperate with further discovery

suggesting that the FRCP do not apply.  NHF believes that the present action is a

direct action, and that NHF has a right to normal discovery, including use of

interrogatories, admissions and depositions of federal officials.  Alternatively, NHF

believes that it may seek discovery and seek to supplement the record.


Notwithstanding the Secretary's legal position, the Secretary has provided

limited documents relating to 1) the Initial Montezuma Creek contracting

documents, 2) 2005-27 Area Budget documents showing the distribution of Hospital

and Clinic and Contract Health Service program funding, including Contract Health

Service shortfalls, and 3) the 2005-2007 Fort Defiance Service Unit Budget

Documents.   The Secretary has declined to provide other requested documents that

relate to the budget reallocations/re-programming that "allowed" the Montezuma

Creek ISDEA contract to proceed, internal memoranda relating to efforts/non-

efforts of NAIHS to comply with its MOA with NHF, and budget documents of

sufficient detail to determine whether funds were available in the NAIHS/IHS to

fund the NHF.


### SUMMARY OF ARGUMENT


Whether actions under the ISDEA are direct actions or judicial review on the

administrative record alone is a question of first impression in the DC Circuit. Legal

research indicates only one reported decision from the US District Court for the

District of Oregon, which held that the matter was a direct action.  One DC Circuit

case addressed a similar issue and would seem to agree that *de novo* review is

appropriate, but the issue of additional discovery was not addressed.

If the court determines that it is to simply a review of the administrative

record, NHF is still be entitled to limited discovery and to supplement the record.

While the majority view is that the record should not be supplemented under the

APA, generally, the record may be supplemented upon a showing that the record is

incomplete. Additionally, the Court has allowed that "some discovery might be

required if "additional explanation" of the Secretary's decision was necessary."


**DISCUSSION**


*I. THE ISDEAA SETS FORTH ITS OWN STANDARDS FOR JUDICIAL
REVIEW AND DECISIONS OF THE AGENCY DO NOT FALL UNDER THE APA
FOR PURPOSES OF REVIEW.*

The one case that has squarely dealt with the issue is *Shoshone-Bannock Tribes

of the Ft. Hall Reservation v. Shalala*.[13] Like this case, the Court was considering a

challenge to the declination of an ISDEA contract for health services in which the

Secretary alleged that it lacked available funding. In that case, the Court begins by

examining the applicable standard of review appropriate in a case brought under

the ISDEAA.  It noted that 25 U.S.C. § 450m-1 provides for review of agency action

under the ISDEAA as follows:

> The United States district courts shall have original jurisdiction over any civil
> action or claim against the appropriate Secretary arising under this

---

[13] 988 F. Supp. 1306, 1313-1318 (D. Or. 1997) (reconsideration granted on other
grounds 999 F. Supp. 1395 (D. Or. 1998)).

subchapter and, subject to the provisions of subsection (d) of this section and concurrent with the United States court of Claims, over any civil action or claim against the Secretary for money damages arising under contracts authorized by this subchapter. In an action brought under this paragraph, the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this subchapter or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this subchapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 450f(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract).

The Court then examined how this comports with the APA, and noted that the APA employees an arbitrary and capricious standard of review which is confined to consideration of the administrative record.  It noted, "where Congress intends review to be confined to the administrative record, it so indicates, either expressly or by use of a term like 'substantial evidence.'"[14] The Court also recognized that the statutory language, legislative history, and presumptions favoring Indian rights makes actions brought under the ISDEAA unique from the myriad of other actions that can be brought against an administrative agency.

### A. Statutory Language

---

[14] *Shoshone*, 988 F. Supp. at 1313 (quoting *Chandler v. Roudebush,* 425 U.S. 840, 862, n. 37 (1976)).

The specific language of the statute weighs very heavily in favor of *de novo* review. This would imply that the Tribal Organization would have the benefit of full discovery and supplementation of the record. First is the term "original jurisdiction." This is distinguished from appellate jurisdiction (which the APA envisions) by both the US Constitution, in Article III § 2, cl. 2, and Black's Law Dictionary, 7th Ed., 855-6 (1999). The use of the term alone, however, is insufficient to determine the proper standard of review.[15]

The additional term "civil action" strengthens the argument that *de novo* review is appropriate in this circumstance. The Court noted that the two terms combined are found in many other statutes governing matters that "typically proceed *de novo, e.g.*, 28 U.S.C. §§ 1331, 1332, 1335, 1337, 1338, 1339, 1340 and 1343 or concurrently in the district courts and the Court of Claims." *Id.*[16]

The final part of the statutory language which compels the full range of procedures available in a "normal" civil suit instead of the truncated APA proceedings is that the statute specifically allows for monetary damages, which are

---

[15] *Shoshone*, 988 F. Supp. at 1314.
[16] *C.f. Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631 (2005) (addressing a case where the 10th Circuit and Federal Circuit had concurrent jurisdiction).

not authorized under the APA. 5 U.S.C. § 702. The Court reasoned that Congress

recognized that in some instances an injunction or other equitable relief may not be a

sufficient remedy for the tribes affected by the government's violations of the

ISDEA.[17]

### B. Legislative History

Initially given broad discretion to administer the ISDEAA, the DHHS was

stripped of most of its discretion in subsequent amendments to the Act. As the Court

observed, the legislative history is clear on this matter. In fact, the stated purpose of

language added to 25 U.S.C. 450m-1(a) in the 1994 amendment was "to clarify the

right of contractors to seek immediate judicial relief to review a declination finding

or to secure the award and funding of an approved contract, *without first invoking*

*further administrative levels of appeal or similar 'exhaustion' procedures which could further*

*delay the contracting process.*" S Rep No 103-374, 103rd Cong, 2d Sess. 14 (1994) ("1994

Senate Report"), p. 13 (emphasis added). The Court, in quoting the legislative

history, added the comment that "speedy justice does not necessarily preclude the

opportunity to obtain full discovery and a factual hearing, if appropriate."[18]

Concluding that there can be no instance of greater agency self-interest than in

---

[17] *Id.* at 1315.
[18] *Shoshone*, 988 F. Supp. at 1316.

preventing an outside third party from taking over its authority and funding, the Court ruled that "[a] tribe should be entitled to the same full discovery, hearing and *de novo* review when it elects to proceed directly to court as it is entitled to receive if it elects to proceed before the agency or an ALJ." *Id.* at 1317.

### C. Presumption Favoring Indian Rights

Recognizing the uniqueness of cases involving Indian Rights and not distinguishing procedural from substantive rights, the Court acknowledged the presumption that statutes are construed favorably towards Indian Tribes when there is any ambiguity. It noted "the canon of construction favoring Native Americans controls over the more general rule of deference to agency interpretations of ambiguous statutes."[19]

While other district courts have held in unreported decisions that the ambiguity in § 450m-1 should be resolved by applying the presumption against *de novo* review, the D.C. Circuit Court of Appeals has implied that it would be appropriate. In remanding a case to the D.C. District which it reversed a non-granting of a preliminary injunction for a non-funding of a contract, the Court stated

---

[19] *Id.* (quoting *Ramah Navajo Chapter v. Lujan,* 112 F.3d 1455, 1462 (10th Cir.1997)).

that "the district court, in its discretion, might choose to hold a hearing." *Ramah Navajo School Board, Inc. v. Babbitt*, 87 F.3d 1338, 1341 (D.C. Cir. 1996).[20]

> In sum, as stated by the District of Oregon:
>
> Because a tribe claiming that the Secretary has violated its rights under the ISDEA is better protected by a civil trial *de novo* before an impartial court, than by deferential judicial review of an agency-created record, any ambiguity in § 450m-1(a) should be resolved in favor of the right to *de novo* review.[21]

## II.. *IF THE STANDARD OF REVIEW IS NOT* DE NOVO*, OR IF THE COURT DETERMINES THAT IT WILL BE A* DE NOVO *REVIEW OF THE RECORD, NHF SHOULD BE ALLOWED LIMITED DISCOVERY AND ALLOWED TO  SUPPLEMENT THE RECORD.*

In *National Resources Defense Council, Inc. v. Train*, 519 F.2d 287 (D.C. Cir. 1975), the Court granted additional discovery based upon the fact that the agency record was clearly incomplete.[22] Because of the incompleteness of the record the D.C. Circuit remanded to the District Court with instruction for additional "limited discovery" in order to determine whether any other documents properly part of the administrative record were withheld. *Id.* at 292.

---

[20] The DC Circuit also references the APA in the opinion, but never definitely states that it applies.
[21] *Shoshone*, 988 F. Supp. at 1318.
[22] The agency, in fact, supplemented the record on appeal, gaining a strong rebuke from the Court of Appeals.

At the center of this case is whether the Secretary had appropriated funds available to fund the NHF contract, or whether it could re-program available funds to fund the NHF contract. Such an inquiry requires a comprehensive review of the funds available to the Secretary, which is not contained in the material. Of course, underlying this question is the question of alleged disparate treatment of NHF when compared to Montezuma Creek. The tribal organizations were similarly situated but received very different treatment.

While the Secretary has provided limited documents which establish the existence of the Montezuma Creek contract, the documents provided are insufficient to establish the known facts: i.e. that Montezuma Creek was operating in a manner similar to NHF under a Buy Indian Contract, and that the Secretary was able to enter into a ISDEA contract for those services, without violating the law, as it precieves the law. The provided documents do not provide insight into the efforts or actions of the Secretary in this alleged disparate treatment. NHF is merely seeking similar treatment by NAIHS. NAIHS asserts, without evidentiary support in the record, that the Montezuma Creek situation was unique, and cannot be duplicated vis-à-vis NHF. The record, however, is clearly incomplete in that it does not address these basic factual issues.

If the Court makes an initial determination that NHS are not entitled to full discovery, the Court should allow limited discovery and supplementation related to the method and means used to fund the Montezuma Creek contract, and all funds available to the Secretary to fund the NHS contract.

**CONCLUSION**

The Court should issue an order to permit NHF discovery and supplementation of the record with evidence.

Respectfully submitted this 22nd day of January, 2008.

<u>s/Michael Walleri</u>
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907) 452-4725 (Facsimile)
walleri@gci.net
Alaska Bar Number: 7906060

<u>Certificate of Service</u>
I certify that a true and correct copy of the
foregoing was served on <u>Jan 22</u>, 2008
via ECF to:

Mr. William B. Jaffe
US Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20035

Megan Lindholm Rose
US Attorney Office
555 Fourth Street, NW
Room E-4220
Washington, DC 20530


<u>s/Michael Walleri</u>