JOSEPH & ASSOCIATES
JOEL D. JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, MD 20814
(301) 941-1989

MICHAEL J. WALLERI
LAW OFFICES OF MICHAEL J. WALLERI
330 Wendell Street, Suite E
Fairbanks, AK 99701
(907) 452-4716

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAVAJO HEALTH FOUNDATION/ SAGE MEMORIAL HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>THE HONORABLE MIKE LEAVITT, in his capacity as Secretary for Health and Human Services, the DEPARTMENT OF HEALTH AND HUMAN SERVICES, and THE UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Action No. 1:07-00151 (RWR)<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO PERMIT DISCOVERY AND SUPPLEMENTATION OF THE RECORD** |

The Secretary opposes the motion of the Navajo Health Foundation seeking

an order to permit discovery and supplementation of the record with evidence. In

support of his position, the Secretary improperly cites to two unpublished District Court opinions,[1] argues that discovery is not appropriate in an APA proceeding, and that this Court should consider this matter an APA proceeding because 1) the Indian Self-Determination Act (ISDA) does not supply a standard for judicial review, and therefore, it is an APA action with limited review on the record; 2) 25 U.S.C. § 450m-1 cannot be construed to authorize a direct action against the Secretary with full procedural discovery rights, and 3) Legislative history indicates that discovery should not occur before the judicial forum.

**1.    The Court Should Approach Cited Unpublished Authority by the Secretary with Caution**.  As a preliminary matter, it must be noted that the Secretary has improperly put forward two (2) unpublished 1997 decisions from U.S. District Courts within the Ninth Circuit --- District for Alaska and Northern District of California.  Indeed, the Secretary's argument is largely a reiteration of the holdings in those two cases.  Under the applicable rules at the time the opinions were issued, neither decision was intended to have precedential value.[2]  Equally, unpublished opinions from unrelated cases have no precedential value in either the

---

[1] *Yukon-Kuskokwim Health Corporation, Inc. v. Shalala*, Civ. No. 96-155 (JWS)(D. Alaska 1997); *California Rural Indian Health Board, Inc. v. Shalala*, Civ. No. 96-3526 (DLJ)(N.D. Cal. 1997)
[2] D. Alaksa Local R. 7.1 (1997); D.N. Cal. Local R. 7-14

DC Circuit,[3] or the Ninth Circuit.[4] Such decisions may offer guidance, but should be approached with caution and should not serve as a substitute for the Court's independent review of the law.[5] Of course the problem with unpublished decisions, such as put forward by the Secretary, is that they are generally unvetted by subsequent critical analysis.

The questionable validity of these unpublished cases is best illustrated by another unpublished decision of the Ninth Circuit, which would strongly suggest that these decisions have been overruled. In *Norton Sound Health Corp. v. Thompson*,[6] the Circuit Court reviewed a decision of the District Court for Alaska which had granted summary judgment against a tribal organization bringing a claim against the Secretary for reimbursement for certain contract support costs associated with providing health care services under an ISDEA contract. In that case, the Ninth Circuit held that "the district court committed reversible error when it determined that there were no genuine issues of material fact in dispute" and granted summary judgment in favor of the IHS upon the administrative record. In substance, the case presented somewhat similar issues to the present case: i.e. the factual questions

---

[3] Cir. R. 8(f) (DC Cir.); See *National Classification Comm. v. United States*, 765 F.2d 164, 170 (DC Cir., 1985)
[4] Circuit Rule 36-3. (9th Cir.)
[5] *National Classification Comm. v. United States*, 765 F.2d 164, 170 (DC Cir., 1985)
[66] 55 Fed.Appx. 835, 2003 WL 264717 (9th Cir., 2003)

surrounding the methodology used by the Secretary to allocate funds between contracted and non-contracted programs, and the meaning of contract terms and agreements. The Ninth Circuit indicated that the tribal contractor had been able to present evidence sufficient to raise a genuine issue of fact relating to the meaning of certain contract terms and the methodology used by the Secretary to allocate funds between contracted and non-contracted programs. The Court specifically held that such questions could only be resolved by a trial of facts. Clearly, the Ninth Circuit was rejecting the notion that judicial review in ISDA cases is limited to review on the administrative record, which would implicitly overturn the cases cited by the Secretary, if those cases had had any precedential value.

As discussed in detail below, the only published decisions on the issue are in accord with the Navajo position; *Shoshone-Bannock Tribes of the Ft. Hall Reservation v. Shalala*,[7] and *Cherokee Nation of Oklahoma v. U.S.*[8]. Of course, *Shoshone-Bannock Tribes* stands for the proposition that an action such as the present case is a direct action in which the tribe should have the rights afforded by discovery. Specifically, the

---

[7] 988 F. Supp. 1306, 1313-1318 (D. Or. 1997) (reconsideration granted on other grounds 999 F. Supp. 1395 (D. Or. 1998)).
[8] 190 F.Supp.2d 1248, 1257-8 (E. D. Olk, 2001)

District Court for Oklahoma expressed agreement with the *Shoshone-Bannock Tribes* decision in *Cherokee Nation of Oklahoma v. U.S.*

### 2. The Standard of Review Is De Novo

The Secretary employs *ispa dixit* logic respecting the standard of review. In essence, the Secretary argues the standard of review in this case is not *de novo*, because review of administrative actions under the APA is not *de novo*; therefore — this proceeding must be under the APA, and is limited to a review on the administrative record. The repetitious assertion of legal conclusion does not serve as logical support for the asserted principle.

Of course, the Court in *Shoshone-Bannock Tribes* held that the standard of review is *de novo*[9]. That decision specifically mentioned the two older cases relied upon by the Secretary in his opposition, and rejected their reasoning and logic. The only other reported case to consider the matter is the District Court for Oklahoma, which expressed agreement with the holding in *Shoshone-Bannock Tribes*. The Court in *Cherokee Nation of Oklahoma v. U.S,*[10] clearly held that the standard of review applicable in an ISDEA claim against the Secretary was *de novo*. In reaching this

---

[9]

[10] 190 F.Supp.2d 1248, 1257-8 (E. D. Olk, 2001)

conclusion, the Court in *Cherokee Nation of Oklahoma* acknowledged that "It is well-settled law that when a statute provides for judicial review but fails to set-forth the standards for that review, the court looks to the APA for guidance."[11]   However, the Court went on to note

> when Congress intends review to be confined to the administrative record, it so indicates, either expressly or by use of a term like "substantial evidence". *Chandler v. Roudebush, 425 U.S. 840, 862, n. 37, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).* It is clear from the plain language of the statute there is no such language indicating that review under the ISDA is limited to the restrictive APA standard. In fact, this court finds the plain language of the statute, along with its legislative history, indicates a *de novo* review of an action brought pursuant to the ISDA was intended by Congress.
> …
> This court agrees with the District Court of Oregon that the use of the phrase "civil action" in combination with "original jurisdiction" and the power to award money damages in the ISDA supports a *de novo* review.[12]

In reviewing the trial court's holding in *Cherokee Nation of Oklahoma*, the Tenth Circuit Court of Appeals expressly employed the same standard of review -- *de novo* ---as did the trial court.[13]

---

[11] 190 F.Supp.2d at, 1256, citing *United States v. Carlo Bianchi & Company, 373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963)*

[12] 190 F.Supp.2d at, 1256-7 citing *Chandler v. Roudebush, 425 U.S. 840, 862, n. 37, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).*   As the Court in *Cherokee Nation of Oklahoma* noted,
   In *Chandler,* the United States Supreme Court was interpreting the statutory language of Title VII, which allows a federal employee to bring a "civil action" following an agency decision. In evaluating the language of the statute, the United States Supreme Court held that under Title VII federal employees are entitled to the same rights as private-sector employees, namely discovery and *de novo* review of an agency decision.

[13] *Cherokee Nation of Oklahoma v. U.S,* 311 F.3d 1054, 1060 (10th Cir., 2002)

### 3. The Legislative History Indicates That When Congress Enacted Direct Judicial Review, It Was Attempting To Limit The Secretary's Discretion.

To a large degree, the District Courts in *Shoshone-Bannock Tribes* and *Cherokee Nation of Oklahoma* heavily rely upon the legislative history of the ISDEA. The Court in *Cherokee Nation of Oklahoma* provided an excellent review of this history,[14] which is summarized below.

In 1975 Congress enacted the Indian Self-Determination Act,[15] which was remedial statute designed to end federal agency paternalism and provide for an "orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services."[16] However, the very federal agency paternalism that Congress sought to end, largely undermined the operation of the law through the exercise of agency discretion in implementing the statute. As explained by the *Cherokee* Court

> In 1988 and 1994, viewing their delegation of this broad authority to the IHS as a mistake, Congress enacted sweeping amendments to restrict the authority of the

---

[14] 190 F.Supp.2d at, 1257-1258
[15] P.L. 93-638
[16] 25 USC 450a(b)

Reply: Supp. Record.

>Secretary. These amendments were designed to limit the Secretary's discretion as much as possible. (See Senate Report 103-374)[17]

These law is remarkable in limiting the discretion that the Secretary has in declining contracts. Specifically, §450f[18] mandates that the Secretary approve a Tribes contract under the Act within 90 days unless he makes one of five (5) narrow factual findings. Even if the Secretary makes such a finding, the Secretary is mandated to assist tribes in overcoming the objections to contract. Moreover, §450k(a)[19] actually prohibits the Secretary from enacting regulations implementing the ISDA with narrow exceptions. There is little question that the 1988 and 1994 Amendments to the ISDA clearly intended to limit the discretion of the Secretary in administration of ISDA contracting. It therefore follows, that deferential review of the Secretary's decisions under the ISDA is manifestly inconsistent with the intent of Congress in enacting this legislation.

**4.  There Is No Authority To Suggest That Discovery Should Take Place Prior to District Court Review.** The Secretary argues that the discovery sought by Navajo would be available if only Navajo had undertaken an administrative review

---

[17] 190 F.Supp.2d at,1258
[18] 25 USC § 450f
[19] 25 USC 450k

before coming to U.S. District Court.  The Secretary points to §450(f)(b)(3)[20] to suggest that a tribe is only allowed discovery if the tribe pursues an administrative appeal under this section, but is denied such discovery if the tribe elects to proceed directly to the District Court under § 450m-1.  The Secretary reads too much of the 'discovery' language contained in  §450(f)(b)(3).

The language is clearly intended to provide a statutory right to discovery that would not otherwise apply in an administrative appeal proceeding. Normally, the extent of discovery to which a party in an administrative proceeding is entitled is primarily determined by the particular agency and the agencies needs;  an agency may properly refuse to grant discovery where there are no material issues of fact in dispute for which discovery is necessary.[21]  Historically, there was no regulation that actually provided for such discovery in an ISDA administrative appeal.   The

---

[20] 25 USC §450(f)(b)(3) provides
Whenever the Secretary declines to enter into a self-determination contract or contracts pursuant to subsection (a) of this section, the Secretary shall—
(1) state any objections in writing to the tribal organization,
(2) provide assistance to the tribal organization to overcome the stated objections, and
(3) provide the tribal organization with a hearing on the record with the right to engage in full discovery relevant to any issue raised in the matter and the opportunity for appeal on the objections raised, under such rules and regulations as the Secretary may promulgate, except that the tribe or tribal organization may, in lieu of filing such appeal, exercise the option to initiate an action in a Federal district court and proceed directly to such court pursuant to section 450m–1 (a) of this title.
[21] *Pacific Gas & Electric Co. v Federal Energy Regulatory Com. 746 F2d 1383. (9th Cir.,1984)*

legislative language was clearly intended to provide for discovery where none otherwise existed.

More importantly, however, the Secretary's argument is profoundly disingenuous in that it incorrectly assumes that the Secretary has adopted regulations that actually allow discovery in administrative proceedings.  The term "with the right to engage in full discovery relevant to any issue raised in the matter" was inserted into §450f by the 1994 amendments.[22]  Now, fully seventeen (17) years after the amendment, the Secretary has not actually adopted appeal procedures to fully implement this provision of the ISDA.  As a general matter, the ISDA appeals go to the Interior Board of Indian Appeals (IBIA), and the Secretary's regulations merely provide that "The IBIA **may** use the procedures set forth in 43 CFR 4.22–4.27 as a guide."[23]  It should be noted that the regulations do not require that any procedure be used, but merely suggest the applicable procedures as "a guide."  Most importantly to the present controversy, however, it must be noted that these "guiding" regulations do not provide for discovery procedures.[24]  Indeed, the regulations only provide for a subpoena to compel witnesses and depositions for the

---

[22] See  Act of Oct. 25, 1994, P.L. 103-413, Title I, § 102(5)-(9), 108 Stat. 4251.
[23] 42 CFR 137.417
[24] See generally 43 CFR 4.22–4.27

hearing; not for discovery.[25]   Interestingly, other regulations of the Department of the Interior --- i.e. the Interior Board of Contract Appeals--- provide for limited discovery.[26]  However, even these limited procedures are not part of the procedures referenced in the regulations applicable to ISDA appeals.

In short, the Secretary's argument that discovery is only available in administrative appeals under §450(f)(b)(3) is illusory, because there are no discovery procedures established within the applicable regulations.

---

[25] See 43 CFR § 4.26
[26] E.g. 43 CFR 4.115 expresses a preference for "voluntary" discovery, and will allow discovery orders for depositions to issue   Similarly, interrogatories, production of documents and admissions of fact  may be obtained by order "under appropriate circumstances, but not as a matter of course" See 43 CFR 4.116.

**CONCLUSION**

As noted above, the better authority clearly supports the view that actions under 25 USC § 450m-1 are direct causes of action considered by the Court *de novo*, in which the tribal organization should be permitted full discovery. The Court should issue an order to permit NHF discovery and supplementation of the record with evidence.

Respectfully submitted this 31st day of March, 2008.

s/Michael Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907) 452-4725 (Facsimile)
walleri@gci.net
Alaska Bar Number: 7906060

Certificate of Service
I certify that a true and correct copy of the foregoing was served on March 31, 2008 via ECF to:

Mr. William B. Jaffe
US Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20035

Megan Lindholm Rose
US Attorney Office
555 Fourth Street, NW
Room E-4220
Washington, DC 20530

s/Michael Walleri